## IN THE MATTER OF ALEXANDER C. YOUNG, AN ATTORNEY-AT-LAW OF THE STATE OF NEW JERSEY.

Argued June 11, 1907—Decided September 19, 1907.

In proceedings for the disbarment of an attorney-at-law, it was established, upon evidence beyond reasonable doubt, that the attorney had obtained from a fellow-townsman $100 upon false representations, by assigning to him one month's salary as county attorney, which the attorney had previously hypothecated to another creditor; that on another occasion he had obtained by false representations from a fellow-attorney $525, by the assignment of a mortgage for $600 upon the house of a client of his, taken for a fee, and it appearing that the attorney, when he took the mortgage from his client, who was a poor German woman, had been already awarded by the Orphans' Court $500 for the alleged services in her behalf in the trial of a caveat against her husband's will, and that this amount was a full compensation for the attorney's services, and that such mortgage would not be enforceable in a court of equity, and that the assignee was unable to collect anything upon the mortgage, and it further appearing that the attorney had made no return of any of the moneys so obtained, it was *held* that the attorney must be disbarred.

On rule to show cause.

Before Justices FORT, HENDRICKSON and PITNEY.

For the prosecutors, *Charles C. Black,* appointed by the court.

For the respondent, *Gilbert Collins.*

The opinion of the court was delivered by

HENDRICKSON, J.   The rule to show cause was allowed by this court at a preceding term upon the filing of the affidavits of James Smith, John Eitzen and John I. Weller, charging the respondent, who is an attorney-at-law of this state, with unprofessional conduct in three several respects therein set forth.   The rule required the respondent to show cause before this court why he should not be disbarred or suspended from practice because of unprofessional conduct in the following respects:

*First.* That on or about the 8th day of October, 1902, the said Alexander C. Young, being an attorney of this court, obtained from one James Smith the sum of $100 by false and untrue statements and representations, in that he induced the said James Smith to loan to him, the said Alexander C. Young, the sum of $100, by an assignment and transfer to him, the said James Smith, of his salary as county attorney for the county of Hudson, for the month of October, 1902, when he, the said Alexander C. Young, had at that time already made an assignment and transfer of the same month's salary to one A. Granelli, and he, the said Alexander C. Young, at that time knew that the assignment made to the said James Smith was worthless and without value, thereby inducing the said James Smith to part with the sum of $100.

*Second.* That on or about the 9th day of July, 1896, the said Alexander C. Young, being an attorney of this court, did obtain from one John Eitzen the sum of $125 by false and untrue statements and representations, and that he in-

duced the said John Eitzen to loan him, the said Alexander
C. Young, the sum of $125, at the same time pledging as
security two stock certificates, one being for six shares of
stock in the Avenue C Railroad Company, which, on its face,
showed that said shares are worth $100, and one for six
shares of stock in the Somerset Publishing Company; that
the said Alexander C. Young, at that time, represented to
John Eitzen that said shares of stock were of enough value
to secure to him the repayment of the said sum of $125, and
that he, the said John Eitzen, believing the statements and
representations made by the said Alexander C. Young, and
relying on the truth thereof, thereupon loaned to him, the
said Alexander C. Young, the sum of $125, and that at that
time he, the said Alexander C. Young, knew that the two
certificates of stock, one for six shares of stock in the Avenue
C Railroad Company, and one for six shares of stock in the
Somerset Publishing Company, were without value and worth-
less, thereby inducing the said John Eitzen to part with the
sum of $125.

*Third.* That on or about the 27th day of August, 1900,
the said Alexander C. Young, being an attorney of this court,
sold a bond and mortgage to John I. Weller for the sum of
$525, which on its face represented a security of $600, made
by Catharine Schuckhardt to Boyd S. Ely, which purported
to be a valid and existing lien upon the lands and premises
covered thereby, he, the said Alexander C. Young, stating
at the time he sold it that the bond and mortgage was a
valid mortgage, and that it was as good as gold, and by
means of such false statements and representations induced
the said John I. Weller to pay to him, the said Alexander C.
Young, therefor, the sum of $525; whereas, in point of fact,
the said Catharine Schuckhardt disputed the validity of the
said bond and mortgage for want of consideration, and it
was held by a final decree of the Court of Chancery of the
State of New Jersey that the said bond and mortgage was
null and void; that at the time the said Alexander C. Young
induced the said John I. Weller to pay to him the sum of

$525 for the same, the said Alexander C. Young knew that the said Catharine Schuckhardt disputed the same, and that the said bond and mortgage was not a valid security, and that it was null and void for want of consideration, thereby inducing the said John I. Weller, by false and untrue representations, to part with the sum of $525, and give it to him, the said Alexander C. Young.

Service of the rule was duly made and testimony was taken upon both sides, pursuant to leave given by the rule, which we have read and considered in connection with the argument of counsel thereon. We will take up the charges in the order named.

As to charge No. 1, we think it is sustained. Mr. Smith, who has been city treasurer of the city of Hoboken for twelve or more years, testified to making the loan of the $100 to the respondent at the date and under the circumstances named. It is urged for the respondent that the charge that the latter borrowed the $100 from Mr. Smith on an assignment of his salary for October is not strictly true; that it does not appear that the loan was at all conditioned upon the giving of the assignment, which, as counsel urges, seems to have been a voluntary act upon the part of respondent after the loan was made. But a reference to Mr. Smith's testimony, we think, shows that counsel has misunderstood or misinterpreted what the witness did say in this particular. This is the witness' account of what happened:

"Q. Just give the circumstances in your own way, Mr. Smith.

"A. Well, I also had a provision business in Hoboken, and Mr. Young came there probably about four o'clock one afternoon, and he said he was pretty hard pushed, and wanted to know if I could give him $100; I told him I didn't have it, but would try and get the money for him, and I secured the money, $100, for him, and handed it over to him, and he asked me to step in his office the next day, and I did, and he gave me this acknowledgment, which he said he would," referring to the assignment of salary for October, dated October 8th, 1902, and marked *Exhibit P* 6, which the witness had

just identified in response to counsel, and which was at this point offered in evidence. A little further on the witness testified:

"*Q.* What did Mr. Young say, if anything, at the time he came there for the $100?

"*A.* Well, that he was hard up for money, and he had to have it, and it would be a big favor if I could help him out, and that he would give me an order on the board of freeholders for his salary for October."

And again a little later:

"*Q.* I am not calling your attention to the document; I am calling your attention to the conversation when he said he was hard up and would give you an assignment of his salary; was that before or after you gave him the money?

"*A.* Before."

And on cross-examination Mr. Smith further testified:

"*Q.* And that is about all that was said?

"*A.* Yes, sir; about all that was said, except he told me what security he would give for the money.

"*Q.* What security did he say he would give you for the money?

"*A.* An order on the board of freeholders for his salary, which was $150, the $50 to be returned to him on the collection of it."

It is further urged that the charge of fraud is not established, that the respondent acted in good faith and made the assignment of the October salary only because he did not know what months he had assigned to Granelli, and that before writing out the assignment he obtained Granelli's consent to change one of the month's salary assigned to him and allow respondent to assign such month to Mr. Smith. It is true the respondent has testified to such a state of facts, and says that he mentioned this fact to Mr. Smith when he executed the assignment to him. But it will be noticed that Mr. Smith's testimony is to the contrary of this as cited above, where he testifies that at the time of the loan the respondent said he would give to Mr. Smith, if he would help him out, an order on the board for his salary for October. It is further

urged, however, that the respondent's testimony in this particular should be accepted as true because it is corroborated by a circumstance appearing upon respondent's examination, which is to the effect as alleged that the word "October" in the assignment of salary to Mr. Smith was written over an erasure of some other word that had been written there, not now discernible. And respondent testified as to this erasure and said: "I wrote this paper, or the body of it, one time in my office, and then it had another month, which I have scratched after speaking to Mr. Granelli and questioned him as to what months had been assigned to him. I went downstairs and put the word 'October' in it before I delivered it to Mr. Smith." The exhibit showing the alteration has not been submitted to us, but assuming it to show the alteration as stated, we fail to see any special significance in the circumstance as bearing upon the point suggested. Respondent had previously testified that Granelli, in response to his question, said he did not know what months had been assigned to him and that the papers were in the hands of his attorney, Mr. Allen, but that he, respondent, might go ahead and assign a month's salary to Mr. Smith and change one he had assigned to Granelli to another month. So that not having learned which months he had assigned to Granelli when he made it, why he changed the month in Mr. Smith's assignment to October, after erasing a different month, does not appear and the respondent does not say. But had the respondent in fact forgotten what months he had assigned to Granelli? The case shows that on March 10th, 1902, he made a formal assignment to Granelli, duly acknowledged, in consideration of $600, of his salary for the months of May, June, July and August, 1902. This transaction with Mr. Smith was on October 8th, 1902, and on June 23d preceding the assignment was brought freshly to his mind, for on that date he took from Granelli a release in his own handwriting of the months' salary for July and August, and on the same date executed and delivered to Granelli in lieu thereof a transfer to Granelli, drawn in his own handwriting, of his

salary for the months of September and October in that year instead of July and August. Granelli's testimony has been alluded to as lending some support to the respondent's testimony in the particular under consideration. Granelli was called by the prosecutor and testified, and it must be admitted, as counsel suggests, that his testimony was somewhat uncertain and evasive. His testimony reads as if he was an unwilling witness, and that may be accounted for to some extent by the witness' admission that he had refused in the first instance to obey the subpœna, and that ten days previous he was with the respondent at his office in New York and had supper with the respondent and one of the latter's friends over there; that respondent knew witness had then been subpœnaed, and that while witness' evidence was not discussed they did talk about Mr. Weller and these proceedings. Granelli did testify on cross-examination when shown *Exhibit P* 4, which was his release of the months of July and August before mentioned, that it contained his signature and was correct; he then admitted that he remembered having talks with the respondent with regard to permission to assign salary to other persons than himself after the salary had already been assigned to him; he guessed it was done in some other cases, but he could not say at any particular time or at any one time; and being further questioned said that the paper in question did refresh his mind and he certainly did give respondent permission in that case. He was then asked: "*Q.* Now, didn't you on other occasions give him permission so to do when it was not evidenced in writing? *A.* I wouldn't like to say so unless I saw the writing;" and after admitting that respondent used to come and ask him (witness) whether he could do it, he further testified: "*Q.* And you know you did give him permission? *A.* I did at that time, but I don't remember any other time." We think this testimony is against respondent's contention rather than in his favor. The case shows that no release for October was made in writing by Granelli, nor was it asked for by respondent, nor was any explanation made to Mr. Smith by respondent of his failure

to do so. Granelli drew the salary promptly when it was due. Mr. Smith thereupon brought suit against the respondent in the Second District Court of Jersey City, on February 3d, 1902, and received judgment for the amount of the loan, but nothing has been recovered or paid thereon. As before stated, our conclusion is that charge No. 1 is sustained.

As to the second charge, Mr. Eitzen testified that at his saloon in Hoboken, in July, 1896, he made a loan to the respondent of $185. He did not know exactly the amount just then, but he thought it was about $185. He loaned the money in two payments, one for $60, for which respondent gave him a check at the time of the loan, dated ahead three days, which he collected through the bank. The other was for $125, for which he received a check, which was produced and shown to witness, dated July 13th, 1896. Witness identified the check produced, and said it was dated six days ahead by respondent, and that this check for $125 has never been made good. He further testified that respondent said, when applying for the loan, that he was very short of money, and that he had security for the money; that he told respondent that he, witness, was very short of money himself, and then respondent produced this paper—two papers, railroad stocks—and said the value of this stock would cover the amount about three or four times. Witness then produced two stock certificates, one for six shares of the Somerset Publishing Company, of the par value of $25 each, with blank assignment on the back signed by the respondent; the other for twenty-six shares of stock of the Avenue C Railroad Company, a New York corporation, dated March 18th, 1870, the par value being $100 each, and testified that these were the two stock certificates the respondent gave him. Witness testified further that he had not endeavored to find out whether the two stock certificates had any value; that he never tried to sell them; that all he knew was what he had heard a person in his saloon say, and also a lawyer say, which was ten years before; that he had obtained a judgment on the check in a civil suit, but received nothing upon it; that respondent had borrowed money of him before this occasion. Upon the

question of *scienter,* the attorney of Eitzen testified that the respondent was examined under oath in supplementary proceedings upon the judgment before a commissioner in December, 1896, and, with the aid of a copy of the notes of the testimony taken in longhand to refresh his memory, and as the witness remembered it then, respondent said, as to the value of the Avenue C railroad stock, it was no good. Witness could not remember that respondent testified particularly as to his Somerset Publishing Company stock, and could only remember in a general way that the result of his testimony was that he was worth nothing. The notes of the testimony of the respondent referred to by the witness, purporting to be subscribed and sworn to by respondent before the commissioner, were offered in evidence, but the paper was objected to, it being a typewritten copy of the original, which was not produced or proved. The objection must be sustained, and the contents of the supposed affidavit will not be considered.

The respondent says in his testimony in this proceeding that he did not give to Eitzen the certificates of stock named as security for the loan made to him, as he had done before for loans made to him by Eitzen; that the stock in the Somerset Publishing Company represented cash he had paid into the company before its incorporation, and that he took the Avenue C stock from a person he had defended for a fee; that at the time of this transaction he took the publishing company stock to be of the value of its face, but he did not know actually; that whether or not the Avenue C Railroad Company was an active company at that time, he did not know anything about it, and told Eitzen so; that they discussed this certificate each time, and he told Eitzen that he did not know anything about its then value or prospective value. Mr. Eitzen was not called in rebuttal to contradict this testimony of the respondent. Where charges are made against an attorney-at-law looking to his disbarment, involving a criminal offence or alleged moral obliquity, the court should not act upon them unless the evidence is clear. We think the proofs of fraud in this second charge fail to reach

that standard, and considering also the staleness of the charge, especially as bearing upon the weight to be attached to evidence depending upon the memory of witnesses, our conclusion is that the Eitzen charge is not sustained.

As to the third charge, Mr. Weller, who is an attorney-at-law of this state, has testified that he was induced to take the bond and mortgage in question on behalf of himself and Mr. Lichtenstein, his partner, and pay for the same to the respondent the sum of $525, the deduction of $75 of the face value being allowed to cover the making of a search, &c., under the circumstances; that the respondent was a neighboring attorney of theirs on the same floor of the Hudson Trust Company, and that on the date named, August 22d, 1900, he came to witness' office and said that he owned a mortgage for $600, which he had gotten for a fee from a woman named Catharine Schuckhardt, and it was just as good as gold; that Mr. Lichtenstein, witness' partner, wanted to accommodate respondent, but he did not, and told the respondent that he did not wish to buy the mortgage; that respondent came again and again and was urgent, stating, among other things, that he just wanted the money to tide him over, and that he would take the mortgage back himself at any time if witness' firm did not want it; that he had not taken the mortgage from Mrs. Schuckhardt in his own name but had taken it in the name of Mr. Ely, who at that time was a member of the firm of lawyers of which he, the respondent, was the head; so that after finding out the value of the property from a third party, witness and his partner agreed to take it, and the negotiation was closed by taking the assignment of the bond and mortgage from Mr. Ely and giving their check for the amount to Mr. Ely, who endorsed it over and delivered it to respondent in witness' presence; he further testified that they could not get the money and then started foreclosure proceedings, and that at the trial respondent was present and gave testimony, a copy whereof from the stenographer was produced and identified by the witness and was offered in evidence along with the bill and answer and

cross-bill of Mrs. Schuckhardt and the final decree thereon in the Court of Chancery, dated February 20th, 1905, wherein the relief sought by complainants was denied and a decree made in favor of Mrs. Schuckhardt on her cross-bill that the bond and mortgage . be surrendered with a proper receipt thereon for cancellation and be no longer a lien, and the collection of any money upon the bonds was perpetually enjoined. No appeal has been taken from the decree. The decree was advised by Vice Chancellor Stevenson. Objection was made to the offer of the record of the foreclosure proceedings, so far as being a binding decree upon the respondent, who was not made a party thereto; and the point is raised upon the argument that this record and decree are not evidential. We must so regard it and the objection thereto must be sustained. This ruling does not, of course, apply to the testimony on the trial thereof before the Vice Chancellor by the respondent which has been regularly put in evidence; the evidence of Mrs. Schuckhardt therein is not in evidence and she was not called as a witness in this proceeding, she having removed in the meantime to the lower part of the state. Mr. Weller further testified that he had not received from the respondent or from any other person any part of the principal and interest of the bond and mortgage; that he had repeatedly asked the respondent to make the amount good, since the decree, but only once since he left the state, which was about the time Mr. Smith brought the suit against him already referred to under the first charge.

It remains to consider whether the mortgage in question was at the time of the assignment a good and valid security within the fair meaning of the representations, and if it was not whether such invalidity was known to the respondent at the time; its validity is here challenged on the ground that it was null and void for want of consideration, the contention being that the consideration named therein was not for a fee due from Mrs. Schuckhardt to the respondent as he alleged; that provision had already been made by the Orphans' Court for the payment to the respondent or to his firm of all that

was due to him or them for services rendered in contesting the will of Mrs. Schuckhardt's late husband, and that the mortgage was in fact wholly without consideration and void. If some part of the consideration might be valid, still the circumstances under which the respondent, as the trusted counsel of Mrs. Schuckhardt, had procured the execution and delivery of this mortgage to Mr. Ely for the respondent were such that the mortgage would be unenforceable against her in a court of equity. The testimony of the respondent at the trial of the foreclosure suit shows that Mrs. Schuckhardt when she executed the mortgage in question did not understand it as including in the amount named compensation for any services beyond those rendered by the respondent or his firm in the contest of the will of her late' husband. The case had been certified to the Hudson Circuit on application of the caveator and was there tried by jury and a verdict returned finding the will invalid because of undue influence. The respondent testified at the trial in the foreclosure suit that Mrs. Schuckhardt then came to his office in response to a notice from him and then used these words: "We had at that time prepared a mortgage, this mortgage, or else one just like it, with no amount in it, and no names in it, the names being in blank. She came to the office and talked over the amount of the allowance fixed by the court, discussed that; and her remark was that that was all right; and I asked her then if we could not settle up the matter of my charges, that that was the allowance fixed by the court and was to go to the firm of Young, Arrowsmith & Ely, and I wanted to adjust the matter of my charges," &c., and that she agreed on the amount of $600 for him, respondent, and then signed the bond and mortgage. The amount allowed by the court had not then been paid to counsel, and whether Mrs. Schuckhardt understood that the mortgage was to secure the payment of $600 to her counsel for these services, in addition to the $500 allowed by the court, in the absence of testimony, must be left somewhat to conjecture. But that she had no reason to believe it was meant to include any other services of respondent than those performed in the will case seems clear to us from his

testimony. If it was intended to include any other services, the design was not made known to her on the occasion mentioned. When asked later how he reached the conclusion that Mrs. Schuckhardt thought he was entitled to $600, and what he based that amount on, he answered: "I did not attempt to go into it item by item. Mrs. Schuckhardt knew what I had done, and I had no difficulty whatever in arranging it with her; we recounted, in a general way, the work I had done, and that is all there was to it." Under the proofs it is evident that this mortgage could not be maintained for anything beyond the value of the respondent's services in the conduct of the will case. The $500 was allowed him by the judge of the Orphans' Court after consulting the circuit judge who heard the cause, out of the estate, which was small, and we are satisfied that it was full compensation for the services he and his firm had rendered in the suit. The trial only occupied two days and perhaps part of a third day. Upon appeal to the Prerogative Court the decree of the Orphans' Court, based on the verdict of a jury was reversed, and the will admitted to probate and the case went no farther. The effort of counsel to have Mrs. Schuckhardt think the $500 was for the firm alone, and did not cover his services, was quite insincere. He conducted the case entirely, and his conducting it in the name of the firm did not alter in any way the matter of compensation. Mrs. Schuckhardt was a poor woman, had nothing but her home upon which the mortgage was placed, which came to her as survivor of her husband, the deed having been made to them jointly in the husband's lifetime, except her dower right to some real estate. There was no evidence that she had ever made a contract with respondent to pay him for contesting the will. We think therefore that the mortgage was without any lawful consideration; she had no one to advise her independently, she was relying entirely upon the justice and good faith of her attorney, and we think his taking this mortgage from her under the circumstances was an act of bad faith, and in effect a gross fraud upon her rights. Some of the circumstances which further indicate the want of good faith are the respondent's

preparing the mortgage beforehand, his making it payable in thirty days when he knew she had no money to pay with, and when he assigned it, although he had told her, he says, if he did so he would make arrangements that she should have a year, he did not keep his promise. We also think that such a mortgage would not be enforceable in equity against the mortgagor.

It is needless to say we think the respondent, who had been a practicing lawyer of this state for many years, knew of the invalidity attaching to this mortgage when he made the representations complained of.

It was suggested by the learned counsel for the respondent that each of these charges involves a criminal offence, and that they do not affect him as an attorney, but touch his conduct as an individual only; that although there is no inflexible rule that disbarment for such a cause should be delayed until there has been a conviction of the offence, yet if the evidence is conflicting, and if a reasonable doubt of guilt exists, the court should not proceed summarily, but leave the case to be determined by a jury, citing *Ex parte Wall*, 107 *U. S.* 265. It must be said, however, that as to the third charge, we think that the respondent, in addition to an indictable offence, stands charged in effect with unprofessional conduct in his dealings with Mrs. Schuckhardt, his client, and the same has been one of the subject-matters of the investigation. And it must be observed also that the charges under consideration do not emanate directly from private prosecutors, but are presented on behalf of the Hudson County Bar Association, and that the charges affecting the respondent in both of the aspects named are naturally grouped together. The indictable offences charged were probably barred by a statute of limitation. We think this case may be classed with the group of cases referred to by Mr. Justice Bradley in *In re Wall, supra,* in which it is proper to proceed without such previous conviction.

It is also suggested that, in view of the grave results to the respondent that may follow disbarment, we should further hesitate to impose it if reasonable doubt be left, especially

since the respondent has voluntarily removed from the state and can no longer practice here. But the charges are established, we think, with that degree of proof, and there is a well defined duty which belongs to the courts in cases of this kind, unpleasant though it be. Attorneys are officers of the court and liable to disbarment, not only for the commission of indictable offences, but "for any ill practice attended with fraud and corruption and committed against the obvious rules of justice and common honesty." 1 *Bac. Abr.* 506. "Also for base and unfair dealings towards their clients in the way of business," &c., "or demanding fees for business that never was done," &c., "and for other such like gross and palpable abuses." *Id.* 507. These salutary principles have frequently found expression in this court in many cases not necessary to be cited, and we find ourselves unable to avoid the unpleasant duty of imposing the penalty of disbarment upon the respondent. The rule to show cause will be made absolute, and a rule may be entered revoking the respondent's license and striking his name from the roll of attorneys.